RICHARD GAGNET, MARSHAL OF THE CITY OF PENSACOLA, PLAINTIFF IN ERROR, VS. GEORGE REESE, DEFENDANT IN ERROR.

The statute of this State regulating proceedings upon writs of *habeas corpus* does not authorize the State, or any political sub-division of the State, or any officer of either of them, to prosecute a

writ of error to a judgment discharging a prisoner from confinement. The various sections of said statute (Chapter 3129, Laws,) considered with reference to this subject.

Writ of error to the Circuit Court for Escambia county.

After the dismissal of the writ of error in the preceding case this writ was brought in the same case by Gagnet, the Marshal of Pensacola.

*S. Belden* for Plaintiff in Error.

*S. R. Mallory* for Defendant in Error.

Mr. Justice Westcott delivered the opinion of the court.

Under the English practice it was only to judgments in causes where issues might be joined and tried, or where judgments might be had upon demurrer, that a writ of error would lie. To *habeas corpus* proceedings, therefore, where no such issues could be taken, or judgments upon demurrer had, no writ of error would lie. Under the American practice, even where the strict rules as to the acceptance of the truth of the return prevailing in England did not obtain, writs of error did not lie to such proceedings because they were held not to be final judgments. Neither of these reasons are now applicable to proceedings in *habeas corpus* under our statute. Evidence in contradiction of the return may be now received and the judgments rendered are final in their character in most cases. The *habeas corpus* proceeding cannot be again invoked. The reasons why the writ did not lie, therefore, have here ceased to exist. But we are not left to doubt upon the subject. The statute itself provides that the judgment, if it be one remanding the petitioner to the custody and control from which he came, can be changed or affected in no other direct way

than by a writ of error, and if he seeks redress in another suit against those from whose control or custody he has sought to be released he is confined to his action for false imprisonment. The same section provides further that where the petitioner is discharged from confinement he cannot be afterwards confined or imprisoned for the same cause · unless by the order or judgment of a court of competent jurisdiction. This is the 11th section. A further and subsequent section provides that if " any party to such judgment shall feel himself aggrieved thereby," he may have a writ of error.

The question here is, has the prosecutor, whether it be the State or any political sub-division thereof, the right to a writ of error in case the prisoner is discharged.

The clear effect of the 11th section is to enact that a judgment remanding a prisoner may be the subject of a writ of error, and may be thus directly reversed and set aside, but that a judgment discharging a person confined in such manner as was the prisoner here can never be directly affected in any proceeding by writ of error in the *same case* or prosecution. He may be afterwards confined by the order or judgment of a court of competent jurisdiction " *for the same cause*," but this confinement must be such an one as is consistent with the nature of the other judgment. Such as would perhaps be the case of the subsequent confinement or imprisonment of the party for the same cause, but upon new and additional evidence or after other and legal proceedings of a tribunal authorized to present an indictment, such as a grand jury.

Should this court reverse this judgment upon a writ of error, and such must be its course if a writ of error lies and we think there is error, we must set aside the judgment of discharge *in the same case*, which we think the statute does not contemplate. The Legislature never here

intended to modify the common law effect of a judgment of discharge of a prisoner except as the terms of the statute clearly indicate, and to construe the words order or judgment of a court of competent jurisdiction in the 11th Section of this act to embrace an order of this court, reversing that judgment, would be inconsistent with all of the preceding portion of the act. It would be little less than stupid for the Legislature to say in an act affecting the liberty of the citizen that in a given case the Judge before whom the imprisoned citizen was to be brought should " forthwith grant the writ returnable immediately, that the writ shall be executed without delay and the body of the prisoner be brought before the court without delay, and that the court should without delay, either discharge him, admit him to bail, or remand him to custody," and at the same time provide that after all of these things were done, or ordered to be done, the judgment in case of discharge would be the subject of review upon error. Again, we find but two States in which anything of the kind was ever practiced, and in each of these any effect upon the reversal of the judgment so as to authorize the subsequent arrest of the prisoner is disclaimed and discountenanced. One of these courts says: " No decision that can be made by this court will recapture the defendants and bring them to justice. But it has been urged upon us by the Attorney-General to express an opinion which may prevent their former discharge from being urged in their behalf in case they should be retaken and may serve to guide magistrates in like causes." Dudley (Law) Rep., S. C., 295.

In the State of Ohio, an early statute provided that the proceedings on any writ of *habeas corpus* should be recorded by the clerks and may be reviewed on writs of error and *certiorari* as in other cases now provided by law, and at the

time of this enactment these writs were the remedies for correcting proceedings at law in civil or criminal cases. Subsequently an act passed declaring that writs of error and *certiorari* to reverse, vacate or modify judgments or orders in civil cases, are abolished, and a petition in error was substituted. In a subordinate State court one Collier, held under process of a court of the United States, was discharged from custody. The Supreme Court of Ohio upon *certiorari* to this judgment dismissed the suit upon the ground that a petition in error, not a *certiorari*, was the remedy. The court says: " We regard this in the nature of a civil proceeding, but if it be in the nature of a criminal proceeding against a prisoner charged with crime it is subject to the fatal objection that no such remedy can be maintained in favor of the prosecution against the defendant. The right to prosecute a writ of error or *certiorari* against one who is indicted and tried for a crime or offence is not given to the State, nor to those who prosecute offenders under its laws." Were we to reverse this judgment, what would our order be? Would we set aside the judgment of the Circuit Court and direct the Judge thereof to send his officers to hunt up a discharged prisoner, and if they caught him to deliver him to the City Marshal, or would we simply reverse the judgment and let the Marshal arrest him? These would be strange judgments, unknown to the courts of any State in the Union, anomalies in the law which we cannot and should not introduce.

We think that section 12 must be so construed as to limit the writs of error therein authorized to cases of *habeas corpus* other than those in which a prisoner held for conviction of alleged crime has been discharged by the Circuit Court; that this is the only construction which can be given this section of the act consistent with the other sections and the manifest purpose of the Legislature to afford

a speedy, effectual and immediately operative proceeding where a citizen's liberty is in question, to determine whether " he is detained in custody with or without lawful authority."

As to the costs: Under the statute the costs may be awarded in favor of the prisoner, and if this be so, the other party to the record is the only one against whom they can be taxed.

Writ of error dismissed.